

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00590-CV

**IN THE INTEREST OF J.A.M.**, a Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-PA-01977
Honorable Larry Noll, Judge Presiding

Opinion by:   Marialyn Barnard, Justice

Sitting:        Phylis J. Speedlin, Justice
                Rebecca Simmons, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  December 19, 2012

AFFIRMED

Appellant O.M., father of J.A.M., appeals the trial court's order terminating his parental rights to J.A.M., a minor child. On appeal, O.M. raises a single issue, contending the trial court erred in terminating his parental rights because the evidence was insufficient to establish termination was in J.A.M.'s best interest. We affirm the trial court's judgment.

### BACKGROUND

J.A.M. was born July 30, 2011. At birth, J.A.M. tested positive for cocaine. At the time of J.A.M.'s birth, O.M. was incarcerated for possession of a controlled substance. On August 5, 2011, the Texas Department of Family and Protective Services ("the Department"), sought and received an emergency order for protection relating to J.A.M. The Department also filed a

petition seeking to terminate O.M.'s parental rights, as well as the parental rights of J.A.M.'s mother. In December 2011, J.A.M. was placed in a foster home with his two older half-brothers.

On March 19, 2012, a hearing was held before an associate judge. On March 29, 2012, the associate judge signed an order terminating O.M.'s parental rights to J.A.M. The associate judge also terminated the parental rights of J.A.M.'s mother. O.M. requested a hearing de novo. Thereafter, a hearing was held before the district court. At the conclusion of the hearing, the trial court granted the Department's request for termination. The trial court signed an order of termination on August 31, 2012. In that order, the trial court found O.M.'s parental rights should be terminated because he: (1) constructively abandoned J.A.M.; (2) failed to comply with a court order that established the actions necessary for him to obtain the return of J.A.M.; and (3) knowingly engaged in criminal conduct that resulted in his conviction for an offense and confinement and inability to care for J.A.M. for two years or more from the date of the filing of the petition. *See* TEX. FAM. CODE ANN. § 161.001(1)(N), (O), (Q) (West Supp. 2012). The trial court also determined parental termination would be in J.A.M.'s best interest. *See id.* § 161.001(2). After his parental rights were terminated, O.M. perfected this appeal.[1]

## ANALYSIS

In this appeal, O.M. challenges only the legal and factual sufficiency of the evidence to support the trial court's finding that termination was in J.A.M.'s best interest. He does not challenge the trial court's findings related to the specific grounds for termination.

### *Standard of Review*

Parental rights may be terminated only upon proof by clear and convincing evidence that the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code ("the Code"), and that termination is in the best interest of the child. TEX. FAM. CODE ANN.

---

[1] The trial court also terminated the parental rights of J.A.M.'s mother, but she is not part of this appeal.

§ 161.001(1), (2) (West Supp. 2012); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see also In re J.O.A.*, 283 S.W.3d at 344; *In re E.A.G.*, 373 S.W.3d at 140. This heightened standard is required by due process because termination results in permanent and irrevocable changes for the parent and the child. *In re E.A.G.*, 373 S.W.3d at 140. Under the clear and convincing standard, we ask whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven and that the termination was in the best interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

In evaluating the evidence for legal sufficiency in parental termination cases, we review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.*

We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573–74. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d

105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

### *Law on Best Interest*

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2008). It is well-established that the primary factors to consider when evaluating whether termination is in the best interest of the child are the familiar *Holley* factors, which include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future;

(3) the emotional and physical danger to the child now and in the future;

(4) the parental abilities of the individuals seeking custody;

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive and need not all be proved as a condition precedent to termination. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The absence of evidence about some of the *Holley* factors would not preclude a

factfinder from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Moreover, while it is true that proof of acts or omissions under section 161.001(1) of the Texas Family Code does not relieve the Department from proving the best interest of the child, the same evidence may be probative of both issues. *Id.* at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)).

### *Application*

It is undisputed that J.A.M. was born when his father was incarcerated, and his father remained incarcerated up to and during the trial of this matter. In fact, O.M. appeared by telephone from the prison. The evidence showed O.M. was convicted of possessing a controlled substance and was sentenced to four years confinement. During the trial, O.M. testified he expected to be paroled in January of 2013, but admitted that although he has "been granted parole," he was required, prior to release, to complete a substance abuse program. O.M. admitted on cross-examination that he told the court in August 2011 and March 2012 that he was going to be released during those months, but was not.

Kristin Williams, the Department case worker first assigned to J.A.M., testified she prepared a service plan for O.M. and sent him a certified copy. O.M. testified he received a copy of the service plan. A copy of the service plan, which was admitted into evidence, required O.M. to take certain actions in order to regain custody of J.A.M. Williams testified that although O.M. was incarcerated, there were certain items within the service plan he could have completed, but did not. Specifically, Williams stated O.M. could have: (1) provided her with the names of family members for possible placement of J.A.M; and (2) participated in parent education classes, support groups, and substance abuse education. According to Williams, O.M. did not complete any portion of the service plan.

O.M. admitted he received the service plan and returned a signed copy to Williams, but claimed he could not subsequently contact Williams because he was forced to leave all his documents behind when he was transferred out of Bexar County. He stated no one from the Department ever visited him or attempted to confer with him except when he was in Bexar County. He admitted he did not send monthly letters to Williams, which was part of the service plan, but claimed he could not because he did not know how to contact her after he was forced to leave his paperwork in Bexar County. He also admitted never sending any letters to J.A.M. through the Department, but again claimed he could not because he did not have the paperwork with the contact information. However, he stated that he did send letters to his attorney, so he did have contact with someone on the outside. O.M. admitted he never asked his attorney for another copy of the service plan or the name and address of the Department caseworker, stating "I didn't think I could do that." O.M. claimed he was unaware of any sources in the prison complex that he could use to look up the Department's address.

After her testimony regarding O.M.'s failure to complete any portion of the service plan, Williams further testified that since J.A.M.'s birth, O.M. has had no contact with the child. She stated he had not attempted any contact or created any kind of bond with the child. Williams testified that because of the absence of the bond between J.A.M. and O.M., O.M.'s continued incarceration (despite O.M. statements, according to the judgment of conviction, O.M. is not due for release for another two years), and J.A.M.'s bond with his half–siblings, with whom he resides in foster care, it would be in J.A.M.'s best interests to terminate O.M.'s parental rights.

J.A.M.'s foster mother, R.N.D., testified he has been in her care since December 2011. She testified J.A.M. was placed with her because she and her husband had adopted J.A.M.'s half–brothers. J.A.M. has a "very strong" bond with his half–brothers. R.N.D. said J.A.M.

"lights up" when his older brothers enter the room and that he is very attached to them, following them around and trying to play with them.

R.N.D. stated J.A.M. is almost thirteen months old and is "doing very well." She said he is growing quickly and a development specialist stated he was at fifteen-month-old level with high level motor skills.

R.N.D. testified that if the termination is granted, she and her husband want to adopt J.A.M. This would allow J.A.M. to be raised with his half–brothers.

At trial, O.M. never challenged or disputed the claims, which the trial court ultimately found to be true, that he had constructively abandoned J.A.M., failed to comply with the service plan, and knowingly engaged in criminal conduct that resulted in his conviction for an offense and confinement and inability to care for J.A.M. *See* TEX. FAM. CODE ANN. § 161.001(1)(N), (O), (Q).

After considering the evidence, the *Holley* factors, the undisputed acts or omissions under section 161.001(1) of the Texas Family Code, and the applicable standards of review, we hold there is legally and factually sufficient evidence to support the trial court's determination that termination of O.M.'s parental rights was in J.A.M. best interest. Under the clear and convincing standard, we hold the evidence is such that the trial court could reasonably have formed a firm belief or conviction that termination was in the best interest of the child. *See In re J.P.B.*, 180 S.W.3d at 573.

## CONCLUSION

Accordingly, based on the foregoing, we overrule O.M.'s issues and affirm the trial court's judgment.

Marialyn Barnard, Justice